NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**AMERANTH, INC.,**
*Plaintiff-Appellant*

**v.**

**DOMINO'S PIZZA, LLC, DOMINO'S PIZZA, INC.,**
*Defendants-Appellees*

**PAPA JOHN'S USA, INC., OPENTABLE, INC., GRUBHUB, INC., SEAMLESS NORTH AMERICA, LLC, O-WEB TECHNOLOGIES LTD., HOTELS.COM, L.P., STUBHUB, INC., TICKETMASTER, LLC, LIVE NATION ENTERTAINMENT, INC., TRAVELOCITY.COM LP, HOTEL TONIGHT, INC., ORBITZ, LLC, EXPEDIA, INC., FANDANGO, INC., HOTWIRE, INC., KAYAK SOFTWARE CORPORATION, EMN8, INC., HILTON INTERNATIONAL CO., HILTON RESORTS CORPORATION, HILTON WORLDWIDE, INC., USABLENET, INC., STARWOOD HOTELS & RESORTS WORLDWIDE INC., MOBO SYSTEMS, INC., AGILYSYS, INC., ATX INNOVATION, INC., BEST WESTERN INTERNATIONAL, INC., HYATT CORPORATION, ORDR.IN, INC., NAAMA NETWORKS, INC., MARRIOTT HOTEL SERVICES, INC., MARRIOTT INTERNATIONAL, INC., RITZ CARLTON HOTEL COMPANY, LLC, RENAISSANCE HOTEL OPERATING COMPANY, APPLE, INC., TICKETBISCUIT, LLC, EVENTBRITE, INC., TICKETFLY, INC.,**

**STARBUCKS CORPORATION, IPDEV CO.,
ORACLE CORPORATION,**
*Defendants*

————————————

2019-1141, 2019-1144

————————————

Appeals from the United States District Court for the Southern District of California in Nos. 3:11-cv-01810-DMS-WVG, 3:12-cv-00733-DMS-WVG, Judge Dana M. Sabraw.

————————————

Decided:  November 1, 2019

————————————

RICHARD CHARLES WEINBLATT, Stamoulis & Weinblatt LLC, Wilmington, DE, argued for plaintiff-appellant.

FRANK A. ANGILERI, Brooks Kushman PC, Southfield, MI, argued for defendants-appellees.  Also represented by THOMAS W. CUNNINGHAM, JOHN P. RONDINI.

————————————

Before PROST, *Chief Judge,* PLAGER and DYK, *Circuit Judges.*

DYK, *Circuit Judge.*

Ameranth, Inc. ("Ameranth") sued Domino's Pizza, LLC and Domino's Pizza, Inc. (together, "Domino's") for infringement of various claims of U.S. Patent No. 8,146,077 ("the '077 patent").  The district court entered judgment that claims 1, 4–9, 11, and 13–18 of the '077 patent are patent ineligible under 35 U.S.C. § 101.  We affirm as to claims 1, 6–9, 11, and 13–18, but hold that the district court lacked declaratory judgment jurisdiction as to claims 4 and 5.

BACKGROUND

Beginning in 2011, Ameranth filed numerous actions against companies in the hospitality industry for infringement of various patents covering communications systems for generating and transmitting menus. Ameranth asserted various claims of the '077 patent and U.S. Patent Nos. 6,384,850 ("the '850 patent"), 6,871,325 ("the '325 patent"), and 6,982,733 ("the '733 patent").

The district court consolidated the actions for pretrial purposes including discovery and claim construction. Ameranth's complaint against Domino's asserted infringement of the '077, '850, '325, and '733 patents. Domino's filed counterclaims asserting that the '077, '850, '325, and '733 patents are patent ineligible under § 101.

Various defendants challenged Ameranth's patents before the Patent Trial and Appeal Board ("Board") in Covered Business Method proceedings. In *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1245 (Fed. Cir. 2016), this court held that claims of the '850, '325, and '733 patents on appeal from the Board's decision are patent ineligible. By early 2017, those three patents were no longer at issue in the consolidated district court proceeding, and only infringement of the related '077 patent remained.

Domino's was among the various defendants accused of infringement in the district court actions. In June 2018, defendants Pizza Hut, Inc. and Pizza Hut of America, Inc. (together, "Pizza Hut") filed a motion for summary judgment of unpatentability under § 101 with respect to the '077 patent. Ameranth and Pizza Hut settled, and Domino's requested permission in effect to substitute itself for Pizza Hut to pursue the motion. That request was granted.

On September 25, 2018, the district court granted the motion for summary judgment of unpatentability, finding that "the asserted claims of the [']077 Patent are unpatentable under § 101." J.A. 15. The district then entered final

judgment in the action against Domino's and adjudicated that "all asserted claims of the '077 Patent (claims 1, 4–9, 11, 13–18) are patent ineligible under Section 101." J.A. 1–2.

Ameranth appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

We review a district court's grant of summary judgment without deference. A district court's decision on patent eligibility is reviewed de novo except that its factual determinations are reviewed for clear error. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365, 1368 (Fed. Cir. 2018).

With respect to jurisdiction, we review de novo whether a case or controversy exists and apply Federal Circuit law. *Sanofi-Aventis U.S., LLC v. Dr. Reddy's Labs., Inc.*, 933 F.3d 1367, 1372 (Fed. Cir. 2019).

DISCUSSION

I. Jurisdiction

Ameranth contends that it asserted only claims 1, 6, 9, 13, and 17 against Domino's and thus the district court's order invalidating nine other claims (i.e., claims 4–5, 7–8, 11, 14–16, and 18) should be vacated for lack of declaratory judgment jurisdiction.

Article III courts have subject matter jurisdiction only if there is an actual case or controversy. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126–27 (2007). "[T]he existence of a case or controversy must be evaluated on a claim-by-claim basis" in patent cases. *Fox Grp., Inc. v. Cree, Inc.*, 700 F.3d 1300, 1307 (Fed. Cir. 2012) (quoting *Jervis B. Webb Co. v. So. Sys., Inc.*, 742 F.2d 1388, 1399 (Fed. Cir. 1984)). "[J]urisdiction must exist 'at all stages of review, not merely at the time the complaint [was] filed,'" *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1282 (Fed. Cir. 2012) (second alteration in original) (quoting *Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d

1340, 1343 (Fed. Cir. 2007)), and "a counterclaimant must show a continuing case or controversy with respect to withdrawn or otherwise unasserted claims," *id.* at 1283. All of the circumstances are considered in determining the existence of a case or controversy. *See MedImmune*, 549 U.S. at 127.

Ameranth does not dispute the existence of a case or controversy for claims 1, 6, 9, 13, and 17. But Ameranth argues that the district court was without power to determine the patent eligibility of claims 4–5, 7–8, 11, 14–16, and 18 of the '077 patent because there was no case or controversy with respect to those claims. We first address the latter seven claims (claims 7–8, 11, 14–16, and 18).

In its infringement contentions, Ameranth accused Domino's of infringing various claims of the '077 patent including the seven claims. Ameranth attached to the complaint, its Disclosure of Asserted Claims and Infringement, including allegations that "Domino's Ordering System infringes at least . . . claims 1, 3, 6, 7, 8, 9, 11, 12, 13, 15, 16, 17, and 18 of the [']077 patent." J.A. 12425–26. Domino's then pled counterclaims seeking a declaratory judgment that the claims were unpatentable under § 101. Despite the broad language of the complaint, the district court ordered Ameranth to "select no more than five (5) claims from each patent to assert" and that it "may assert additional claims at this time only with leave of Court." J.A. 2192; *In re: Ameranth Patent Litig. Cases* ("*In re Ameranth*"), No. 3:11-cv-01810 (S.D. Cal. 2012), ECF 623 at 2. The district court also required Ameranth's infringement contentions to "consist of one representative version of each Defendant's accused system for the five selected claims." J.A. 2192.

As a result, Ameranth amended its disclosure of asserted claims: it listed claims 6–8, 14, and 18 in its November 15, 2013 disclosure; and claims 1, 6, 9, 13, and 17 in its July 5 and August 7, 2017 disclosures. *In re Ameranth*,

ECF 1217-5 at 1, 1217-6 at 1; J.A. 2196. Thus, Ameranth did not list claims other than 1, 6, 9, 13, and 17 in its latest amended disclosure of asserted claims. In the amendments, Ameranth stated that the selection was due to the district court's order and alleged that "Domino's infringes *at least* the [listed five claims of the '077 patent]" and it "reserves the right to assert additional and/or different claims in the future by Court order." *In re Ameranth*, ECF 1217-5 at 1–2, 1217-6 at 1; J.A. 2196. There was no indication that Ameranth altered its position that Domino's Ordering System infringes claims 7–8, 11, 14–16, and 18.

The fact that Ameranth did not include certain claims which it originally accused of infringement in the amended disclosure of asserted claims does not mean that a case or controversy with respect to those claims disappeared. An actual suit affirmatively asserting the claims is not a requirement for an Article III case or controversy. *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95 (1993) ("In patent litigation, a party may satisfy th[e] burden, and seek a declaratory judgment, even if the patentee has not filed an infringement action."). The Supreme Court in *MedImmune* has also held that even a "reasonable apprehension of suit" is not a requirement for Article III jurisdiction. 549 U.S. at 132 n.11; *see also Asia Vital Components Co. v. Asetek Danmark A/S*, 837 F.3d 1249, 1252 n.1 (Fed. Cir. 2016) (recognizing that a "reasonable apprehension of imminent suit" is no longer a prerequisite although it may be a factor that can satisfy Article III controversy).

Ameranth's original accusation that Domino's infringed claims 7–8, 11, 14–16, and 18 created a case or controversy. *See Cardinal Chem.*, 508 U.S. at 99–100. "A company once charged with infringement must remain concerned about the risk of similar charges if it develops and markets similar products in the future." *Id.* "Merely the desire to avoid the threat of a 'scarecrow' patent, in Learned Hand's phrase, may [] be sufficient to establish jurisdiction under the Declaratory Judgment Act." *Id.* at 96.

Under our case law, the original case or controversy could cease if the patentee withdrew its claims of infringement. *See Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1276, 1284 (Fed. Cir. 2012) (patentee eliminated claims in its infringement contentions that included information on "[e]ach claim of each patent in suit that is allegedly infringed" by the opposing party (alteration in original)); *Fox Grp., Inc. v. Cree, Inc.*, 700 F.3d 1300, 1308 (Fed. Cir. 2012) (patentee withdrew its assertion of certain claims).

Unlike *Streck* and *Fox*, there is no indication that Ameranth here withdrew its accusations of alleged infringement of claims 7–8, 11, 14–16, and 18. Ameranth limited its claims here only because it was compelled to limit the claims by order of the district court. Eliminating claims 7–8, 11, 14–16, and 18 from the amended disclosure of asserted claims did not eliminate the case or controversy with respect to those claims.

This case is similar to *Voter Verified, Inc. v. Premier Election Solutions, Inc.*, 698 F.3d 1374 (Fed. Cir. 2012). In *Voter Verified*, the patentee alleged in its complaint infringement of every claim of the asserted patent but "later pared back its infringement contentions" with the "caveat that discovery might dictate reintroducing 'other claims in the patents in suit.'" *Id.* at 1382. This court held that the defendants "kept any 'unasserted' claims before the district court by maintaining their respective counterclaims" and thus the district court had jurisdiction to rule on the validity of those claims. *Id.* This is consistent with the Declaratory Judgment Act, which allows a defendant to "counterclaim for a declaration of invalidity and noninfringement . . . [so that] the defendant is protected against the possibility that the [rights holder] will dismiss the suit or that the infringement action will not resolve all of the issues between the parties." *Green Edge Enters., LLC v. Rubber Mulch Etc., LLC*, 620 F.3d 1287, 1300–01 (Fed. Cir. 2010) (quoting 10B Charles Alan Wright, Arthur R. Miller

& Mary Kay Kane, *Federal Practice and Procedure* § 2761 (3d ed. 1998 & Supp. 2010)). In summary, a case or controversy existed with respect to claims 7–8, 11, 14–16, and 18.

The remaining claims found to be patent ineligible by the district court are claims 4 and 5. In its infringement contentions, Ameranth did not accuse Domino's of infringing claims 4 and 5 while it noticed other claims discussed above. Domino's conceded during oral argument that there was no case or controversy with respect to claims 4 and 5.[1] We therefore conclude that the district court did not have jurisdiction to determine the patent eligibility of claims 4 and 5 of the '077 patent.

## II. Notice

Ameranth contends that even if there was a case or controversy with respect to claims 4–5, 7–8, 11, 14–16, and 18, it did not receive notice that those claims would be subject to the summary judgment motion or ruling.

Ameranth points out that Pizza Hut originally filed a motion for summary judgment of unpatentability with respect to only claims 1, 6, 8, 13, and 17. But under Rule 56 of the Federal Rules of Civil Procedure, a district court has power to enter summary judgments sua sponte. Fed. R. Civ. P. 56(f); *see also Int'l Visual Corp. v. Crown Metal Mfg. Co.*, 991 F.2d 768, 770 (Fed. Cir. 1993) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 326 (1986)). For such judgments to be proper, generally the losing party should be on notice so that it has an opportunity to present evidence. *See* Fed. R. Civ. P. 56(f); *Int'l Visual*, 991 F.2d at 770; *OSRAM Sylvania, Inc. v. Am. Induction Techs., Inc.*, 701 F.3d 698, 709 (Fed. Cir. 2012) (citing *Portland Retail Druggists Ass'n v.*

---

[1] During oral argument, Domino's included claim 14 in the list of claims not originally asserted, but, as discussed above, the record shows that Ameranth affirmatively asserted claim 14 in its November 15, 2013, amended disclosure.

*Kaiser Found. Health Plan*, 662 F.2d 641, 645 (9th Cir. 1981)).

Ninth Circuit law, which governs here, recognizes situations where a district court may enter summary judgment against a party even without notice if the party had a "full and fair opportunity to ventilate the issues." *See Arce v. Douglas*, 793 F.3d 968, 976 (9th Cir. 2015) (quoting *United States v. Grayson*, 879 F.2d 620, 625 (9th Cir. 1989)). In *Grayson*, for example, the district court ruled beyond the government's summary judgment motion and dismissed the defendants' counterclaim. 879 F.2d at 625. The defendants had developed factual allegations and legal theories with respect to the counterclaim and presented them in their briefing in opposition to the government's motion. *Id.* The defendants thus had a "full and fair opportunity to ventilate the issues raised in their counterclaim" that was not covered by the motion. *Id.* There was similarly a full and fair opportunity here.

When Pizza Hut settled with Ameranth and Domino's requested to join Pizza Hut's motion, the district court allowed the request and permitted Ameranth to file a supplemental opposition. Ameranth's supplemental opposition addressed all the claims and not just the five listed in the summary judgment motion. For instance, Ameranth argued the patent eligibility of "the claims of the [']077 Patent," stating that "none of the [']077 Patent claims are directed to merely 'configuring and transmitting menus,'" and contended that they are "not directed to any abstract idea." J.A. 10235, 10240; *In re Ameranth*, ECF 1313 at 8. It asserted the "eligibility of claims 1–12 of the [']077 Patent," and further argued the non-conventionality of "all claims," noting that they were issued after "a lengthy, seven year prosecution process" and "found valid by the PTAB" in response to multiple CBM petitions. J.A. 10250–51, 10255. Ameranth also argued that "claims 2–5, 7, 10–12, 14–16 and 18 are patent eligible." J.A. 10258.

As such, we find that Ameranth had the opportunity to and did address claims 7–8, 11, 14–16 and 18 in its supplemental briefing. After a hearing, the district court granted the summary judgment motion, ruling that "the asserted claims of the [']077 Patent are unpatentable under § 101," J.A. 15, and entered judgment that "all asserted claims of the '077 Patent (claims 1, 4–9, 11, 13–18) are patent ineligible under Section 101," J.A. 1–2. Under the circumstances, we see no procedural error in granting summary judgment with respect to claims 7–8, 11, 14–16 and 18.

### III. Patent Eligibility

We next address the patent eligibility of claims 1, 6–9, 11, and 13–18 of the '077 patent. Ameranth argues that the district court erred by relying on *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229 (Fed. Cir. 2016), which held that claims of the '850, '325, and '733 patents on appeal are patent ineligible. Those patents and the '077 patent are in the same patent family.

In *Apple*, the claims covered a first menu consisting of menu categories and an application software for generating a second menu using the first menu. 842 F.3d at 1234. The Board had determined that the claims "are directed to the abstract idea of 'generating a second menu from a first menu and sending the second menu to another location.'" *Id.* at 1240. This court held that the claims are abstract as they neither recited "a particular way of programming or designing the software to create menus" with particular features nor covered "a specific improvement in the way computers operate" and that the claim limitations are insignificant post-solution activities. *Id.* at 1241–42.

Ameranth asserts that claims 1, 6–9, 11, and 13–18 of the '077 patent recite different elements than the claims at issue in *Apple*. To be sure, independent claims 1, 9, and 13 are different from the claims in *Apple* in some respects. Here, claims 1 and 9 cover systems enabled for synchro-

nous communications and automatic formatting of a programmed handheld menu configuration ("PHMC") that is generated using a master menu and that can display cascaded sets of linked graphical user interface ("GUI") screens for multiple handheld devices. Similarly, claim 13 recites a system that can automatically format a PHMC for display as cascaded sets of linked GUI screens and synchronize information between its master database, handheld device, web server, and webpage. Notwithstanding the difference from *Apple*, the district court found that the claims of the '077 patent suffered from the same ineligibility defects. We agree, applying the two-step approach of *Alice Corp. v. CLS Bank International*, 573 U.S. 208 (2014) and *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. 66 (2012).

At step one, we "first determine whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 573 U.S. at 218. We generally agree with the district court that the claims are directed to configuring and transmitting hospitality menu related information using a system that is capable of synchronous communications and automatic formatting. This focus is confirmed by Ameranth's characterization that automatically configuring and synchronizing menus for multiple handheld devices was not previously possible and the specification's emphasis that the inventions enable automatic database updates and fast synchronization between a database and handheld devices. '077 patent, col. 3, ll. 27–35, col. 5, ll. 3–7; *see also Charge-Point, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 765–66 (Fed. Cir. 2019) (explaining that the step one inquiry "as looking at the 'focus' of the claims" and the specification may illuminate the true focus).

As recited in the claims, the concept of synchronous communications and automatic formatting for different handheld devices without more is an abstract idea. *See Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1316 (Fed. Cir. 2019) ("[T]he need to perform tasks automatically is

not a unique technical problem."). Claims 1, 9, and 13 do not contain specifics of "a particular conception of how to carry out that concept" and thus fail to make those claims non-abstract. *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1346 (Fed. Cir. 2018). Those claims "fail[] to recite a practical way of applying an underlying idea . . . [and] instead were drafted in such a result-oriented way that they amounted to encompassing 'the principle in the abstract' no matter how implemented." *Id.* at 1343; *see also Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016) ("[E]ssentially result-focused" and functional language "has been a frequent feature of claims held ineligible under § 101"). Ameranth concedes that the claims cover "*a particular way* of programming and designing the software." Appellant Br. 23. But the claims do not describe the software other than results sought to be achieved.[2]

Given that the claims are abstract, at step two, we next determine whether the claimed limitations involve more than "well-understood, routine, and conventional activit[ies]." *Alice*, 573 U.S. at 225 (alteration in original) (quoting *Mayo*, 566 U.S. at 73). The district court concluded that the recited hardware and software elements and features including "real-time synchronization," "automatic formatting . . . for display as cascaded sets of linked graphical user interface[s]," and a "different number of user interface screens from at least one other wireless

---

[2]    Ameranth argues that this case is like *Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*, 880 F.3d 1356 (Fed. Cir. 2018) where claims involving the display of menu on a screen were held to be patent eligible. *Core Wireless* is distinguishable because there the claims included specific details such as, inter alia, "a particular manner by which the summary window must be accessed" and limitations on "the type of data that can be displayed in the summary window." 880 F.3d at 1362–63.

handheld computing device" do not make the claims inventive. J.A. 14–15.

Claims fall short of an inventive concept when they "simply instruct the practitioner to implement the abstract idea with routine, conventional activity." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014). The specification acknowledges that the "functions falling within the described invention" can be based on "commonly known" programming steps, '077 patent, col. 12, ll. 57–61, and the claim limitations describe a desired result but do not instruct how to accomplish that result. The alleged abstract idea cannot, itself, provide an inventive concept. This is because "a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018). That is the case here. Accordingly, we conclude that independent claims 1, 9, and 13 are directed to an abstract idea, fail to disclose an inventive concept, and thus are patent ineligible.

Dependent claims 6–8, 11, and 14–18 recite limitations that do not cure the above problems. Claims 6 and 18 require a smartphone; claims 7 and 17 recite completion of payment processing; and claim 8 recites creating layout, views, or fonts in conformity with display screen parameters and enabling preview for manual modification. Claims 11 and 16 require two integrated hospitality applications; claim 14 covers a Wireless Hub Application, Web Hub Application, Linked Databases, and Communications Setup Application; and claim 15 recites automatic importation of information from a database. These additional limitations in those claims are themselves routine and conventional, and thus we determine that they are also patent ineligible.

Ameranth contends that the district court ignored its declarations on the inventiveness of its patent claims. But

even after reviewing the evidence in the light most favorable to Ameranth, it does not create a genuine dispute of material fact that would preclude summary judgment.

The declarations to a large extent are directed to unclaimed features. For instance, the declaration of Dr. Michael Shamos, Ameranth's expert, emphasizes that maintaining screen linkages was a core feature why the claimed inventions were not conventional. Such a feature, however, is not recited in the claims.[3]

Other declarations are equally irrelevant for different reasons. The declaration of inventor Mr. Keith McNally includes statements that no one had implemented the purported inventive features prior to his realization. The declaration of Mr. Douglas Dedo states that "Microsoft considered Ameranth's new system synchronization and integration technology to be innovative and ground-breaking in 1999–2000." J.A. 11112. But these declarations do little to relate the claimed features to the asserted praise. In any event, "[g]roundbreaking, innovative, or even brilliant discovery does not by itself satisfy the § 101 inquiry." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 591 (2013). And "[t]hat some of the . . . steps were not previously employed . . . is not enough—standing alone— to confer patent eligibility." *Ultramercial*, 772 F.3d at 716; *see also Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1p151 (Fed. Cir. 2016) ("[A] claim for a *new* abstract idea is still an abstract idea." (emphasis in original)).

Ameranth also argues that its declarations confirm that the inventions solved computerized problems. But they contain general statements that are uninformative and suffer from the above deficiencies.

---

[3] Ameranth similarly argues that its inventions eliminate the need for scrolling in the display of small screen devices. This feature also is not claimed.

Accordingly, we agree with the district court's determination that claims 1, 6–9, 11, and 13–18 are patent ineligible.

## CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment of patent ineligibility with respect to claims 1, 6–9, 11, and 13–18, and remand to the district court to vacate the judgment with respect to claims 4 and 5 for lack of declaratory judgment jurisdiction.

**AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED**

## COSTS

Each party shall bear its own costs.